**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:26-cv-27895**

**ELIOTT RODRIGUEZ,**

**Plaintiff,**

**vs.**

**ALINA GARCIA, in her official capacity as Miami-Dade County Supervisor of Elections and member of the Miami-Dade County Canvassing Board; and MARÍA ELVIRA SALAZAR, solely as an interested-party defendant,**

**Defendants.**
______________________________________________/

**PLAINTIFF'S AMENDED EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, ELIOTT RODRIGUEZ ("Plaintiff"), moves under Federal Rule of Civil Procedure 65(a) for a preliminary injunction against Defendant ALINA GARCIA, solely in her official capacity as Supervisor of Elections of Miami-Dade County and as a member of the Miami-Dade County Canvassing Board (the "Supervisor" and the "Canvassing Board"), limited to the Supervisor's own participation as a member of the Canvassing Board in ballot, voter-intent, and recount determinations, including but not limited to equipment-error, correction, retesting, and continuation decisions, concerning the 2026 general election for United States Representative, District 27 ("CD27"). Plaintiff proceeds on notice and does not

request a temporary restraining order. Rule 65(a)(1) provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party."

Defendant MARÍA ELVIRA SALAZAR ("Salazar") is joined solely as an interested party under Rule 19, and Plaintiff seeks no relief against her.

The Complaint, ECF No. 1, and its exhibits, ECF No. 1-1, are incorporated by reference as if set forth herein.

This Amended Motion and the accompanying Declaration of Eliott Rodriguez, submitted as Exhibit A and incorporated herein, supersedes Plaintiff's original motion, ECF No. 4.

## I. INTRODUCTION

1. The unofficial county figures place CD27 within the one-half-percent range that section 102.141(7), Florida Statutes, requires for a recount. On election night, the Supervisor was reported to have said: "María Elvira is the winner, with or without a recount." the Supervisor's son-in-law, Robert Fernandez, Esq., represents Salazar in connection with an anticipated CD27 recount. The public announcement of a winner and the family connection to that candidate's lawyer independently and cumulatively create the serious, objective risk of bias asserted here. the Supervisor's public political advocacy and responses to recusal demands provide further context, as alleged in the Complaint. (D.E. 1 ¶¶ 2, 16, 19-21, 34-38; D.E. 1-1, PDF pp. 2-3, 10, 51-52.)

2. Plaintiff seeks prospective protection against an objective risk of bias. Plaintiff asks the Court to bar the Supervisor, pending final judgment, from acting

as a member of the Canvassing Board on any CD27 matter, including but not limited to any recount. For this request, a CD27 matter includes a Board determination concerning canvassing, recounting, or certifying votes in the CD27 contest, including decisions of voter intent on rejected or outstacked ballots presented to the Board under governing law; whether a CD27 vote is valid, an overvote, or an undervote; and whether tabulation-equipment errors require correction, retesting, or a pause, resumption, or repetition of recount tabulation. A provisional-eligibility or vote-by-mail signature or protest ruling is included insofar as it determines whether votes in that contest are counted.

## II. STATEMENT OF FACTS

### A. The Candidates and the Canvassing Board

3. Plaintiff and Salazar are the CD27 candidates. Salazar is the Republican nominee, and Plaintiff is the Democratic nominee. Florida law provides that "[t]he county canvassing board shall be composed of the supervisor of elections; a county court judge, who shall act as chair; and the chair of the board of county commissioners." § 102.141(1), Fla. Stat. The Defendant Supervisor holds the seat assigned to the Supervisor of Elections. If the supervisor "is unable to serve or is disqualified," a substitute is appointed, and "[t]he supervisor, however, shall act in an advisory capacity to the canvassing board." § 102.141(1)(b), Fla. Stat.

4. The Supervisor holds one of the Canvassing Board's three votes. Her vote can determine whether a contested CD27 vote is counted. In reviewing potential signature issues on vote-by-mail ballots, § 101.68(2)(c)1., Fla. Stat., provides: "For

purposes of this subparagraph, any canvassing board finding that an elector's signatures do not match must be by majority vote and beyond a reasonable doubt." If a manual recount is ordered, § 102.166(5)(c), Fla. Stat. (2026), provides: "If a counting team is unable to determine whether the ballot contains a clear indication that the voter has made a definite choice, the ballot shall be presented to the county canvassing board for a determination." Regarding provisional ballots, § 101.048(2)(a), Fla. Stat. (2026), provides: "[t]he county canvassing board shall examine each Provisional Ballot Voter's Certificate and Affirmation to determine if the person voting that ballot was entitled to vote at the precinct where the person cast a vote in the election and that the person had not already cast a ballot in the election." In making that determination, the board reviews, among other things, "any other evidence presented by the supervisor, and, in the case of a challenge, any evidence presented by the challenger." *Id.*

5. The Board's responsibility also reaches equipment errors and continuation of recount tabulation. Section 102.141(7)(a), Florida Statutes, provides: "If an error is detected, the cause therefor shall be ascertained and corrected and the recount repeated, as necessary." The Recount Procedures manual directs: "If the test indicates an error, the canvassing board shall first correct the error, retest the equipment pursuant to section 101.5612, F.S., and then proceed with the recount." It also provides: "Any canvassing board determination or decision must be by majority vote." DS-DE 405, §§ 3(d), 3(a)3 (eff. June 2022). Plaintiff seeks recusal from the Supervisor's votes on equipment-error findings, correction and retesting, and

whether CD27 recount tabulation must pause for correction and retesting, may proceed or resume, or must be repeated under governing law. (D.E. 1 ¶ 15.)

6. These duties require judgment by Board members. WLRN reported the Supervisor's statement: "I don't personally count all the votes. They're counted by machine." (D.E. 1 ¶¶ 31, 33; D.E. 1-1, PDF pp. 42-43.) Machine tabulation does not eliminate the Board's responsibility to decide contested ballots, determine voter intent on ballots properly presented to it, resolve overvote and undervote questions, and decide whether an equipment error has been corrected so that recount tabulation may proceed. Those are the decisions from which Plaintiff seeks the Supervisor's recusal.

**B. The Unofficial Returns and Recount Schedule**

7. The county results website, as of November 5, 2026, reports 124,511 votes (50.22%) for Salazar and 123,408 votes (49.78%) for Plaintiff, out of 247,919, a margin of 1,103 votes, approximately 0.445 percent. (D.E. 1 ¶ 16; D.E. 1-1, PDF pp. 2-3.) Section 102.141(7), Fla. Stat. (2026), provides that if the unofficial returns reflect that a candidate for any office was defeated or eliminated by one-half of a percent or less of the votes cast for such office, a recount shall be ordered of the votes cast with respect to such office or measure.

8. The published schedule, revised October 28, 2026, lists a November 6, 2026, 10:00 a.m. canvass of vote-by-mail and provisional ballots, as needed, and unofficial certification, and reserves November 7 through 16 for a recount, as needed. (D.E. 1 ¶ 17; D.E. 1-1, PDF p. 5.)

### C. the Supervisor's Election-Night Remarks and Her Son-in-Law's Representation of Salazar

9. A Miami Herald report from November 4, 2026, attributes to the Supervisor, on election night, the statement: "María Elvira [Salazar] is the winner, with or without a recount." The same sentence states that the Supervisor then added it was "possible but not probable" that enough ballots remained to be counted to flip the results, and the report attributes to the Supervisor the statement: "Usually the trend we see is what continues." (D.E. 1 ¶¶ 19-20; D.E. 1-1, PDF p. 10.)

10. Robert Fernandez, Esq. is the Supervisor's son-in-law and represents Salazar in connection with this election and the anticipated CD27 recount. Asked by CBS News Miami on November 5, 2026, about her son-in-law's involvement with Salazar's counsel, the Supervisor responded, "I don't know, he could be. He does practice election law." (D.E. 1 ¶¶ 35-36; D.E. 1-1, PDF p. 52.) Her professed uncertainty about the representation provides no assurance of independence when she would decide matters affecting his client. Both Fernandez and his wife, the Supervisor's daughter, also attended the November 6, 2026 Canvassing Board meeting.

11. On November 5, 2026, counsel for Plaintiff's campaign transmitted a signed demand to the General Counsel to the Office of the Supervisor of Elections that the Supervisor recuse herself from CD27 matters. (D.E. 1 ¶ 37; D.E. 1-1, PDF pp. 56-57.) CBS News Miami quoted the Supervisor's response: "I will not recuse myself. There is no conflict." (D.E. 1 ¶ 38; D.E. 1-1, PDF p. 51.)

## III. LEGAL STANDARD

12. "A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief." *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). "To obtain such relief, the moving party must show: (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest." *GeorgiaCarry.org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015). Plaintiff satisfies these factors for the limited relief requested.

13. Plaintiff has a substantial likelihood of succeeding on the merits because the Supervisor's public announcement of the winner, her family connection to that candidate's recount lawyer, and her refusal to recuse present a serious, objective risk of bias in the CD27 determinations she would help decide. The requested restraint targets her voting and decision-making role. Florida's statutory replacement mechanism permits the Board's work to continue through a lawful substitute.

## IV. ARGUMENT

### A. Plaintiff Has Standing

14. "Candidates have a concrete and particularized interest in the rules that govern the counting of votes in their elections, regardless whether those rules harm their electoral prospects or increase the cost of their campaigns." *Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 82 (2026). The Court addressed "only candidates' standing to challenge rules that, like Illinois's, govern the counting of votes in their elections."

*Id.* at 82 n.7. Plaintiff challenges a member of the canvassing board's participation in determinations governing which ballots count specifically in his own election. Plaintiff has standing.

**B. Plaintiff Is Substantially Likely to Succeed on the Merits**

15. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. The Fourteenth Amendment provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

16. The Supervisor holds her board seat under § 102.141, Fla. Stat., and acts according to the powers granted by that statute when she votes. "[T]he Due Process Clause has been implemented by objective standards that do not require proof of actual bias." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883 (2009). "The Constitution requires recusal from public officials when there is a serious, objective risk of bias," *League of Women Voters of Fla. v. Scott*, 366 F. Supp. 3d 1311, 1318 (N.D. Fla. 2018), and "the simple fact that constitutionally required recusals have largely been judicial does not limit *Caperton* from applying to non-judicial constitutionally required recusals," *Id.* at 1316 n.6.

17. The challenged functions require the Board to, among other things, weigh evidence and exercise judgment: whether a voter was entitled to vote, whether a signature meets the governing standard, what choice a ballot expresses, and whether an equipment error has been corrected so that recount tabulation may proceed. The Supervisor would exercise that authority in the very contest whose winner she has already announced.

18. First, the reported remarks. The Supervisor reportedly said Salazar is "the winner, with or without a recount" before the remaining vote-by-mail and provisional ballots were scheduled to be canvassed and before any recount had been ordered or completed. Announcing a winner "with or without a recount" creates an objective risk that the Supervisor will approach later CD27 decisions as confirmation of an announced result. Her acknowledgment that reversal was "possible but not probable" underscores that the outcome remained open when she announced it. Unlike *Scott*, where "Scott's most questionable conduct has occurred in his capacity as a candidate rather than as governor," 366 F. Supp. 3d at 1317, the remarks here are attributed to an official who would herself vote on contested CD27 ballots and recount decisions. Her authority includes the voter-intent and equipment-error decisions described above, each of which governs how votes in Plaintiff's contest are counted.

19. Second, the representation. The Supervisor's son-in-law represents Salazar in connection with an anticipated CD27 recount. Plaintiff recognizes that "matters of kinship, personal bias, state policy, remoteness of interest, would seem

generally to be matters merely of legislative discretion." *Caperton*, 556 U.S. at 876 (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)). But the Court has since "identified additional instances which, as an objective matter, require recusal": circumstances "in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton*, 556 U.S. at 877 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

20. The representation concerns the same contest in which the Supervisor holds the statutory supervisor's seat. As a deciding member, the Supervisor would resolve matters affecting her son-in-law's client, including contested ballots and whether recount tabulation must pause, resume, or be repeated after an equipment error. Plaintiff submits that this connection independently presents a serious, objective risk of bias warranting recusal from those decisions. The Court should apply *Scott*'s "serious, objective risk of bias" standard prospectively to the confirmed relationship and representation in the same contest the Supervisor would help decide if she participates. The separately alleged public prediction supplies an additional factual distinction for the cumulative theory. Discussing Supreme Court dicta, *Davis v. Jones*, 506 F.3d 1325 (11th Cir. 2007) explains that "the appearance of bias in certain circumstances can be so substantial and the motive or incentive for bias so strong as to create a presumption of actual bias that may be constitutionally intolerable under the Due Process Clause." *Davis*, 506 F.3d at 1335 n.20.

21. Third, cumulatively. "Only in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation." *Curry v.*

*Baker*, 802 F.2d 1302, 1314 (11th Cir. 1986). The Supervisor named Salazar "the winner, with or without a recount," and the Supervisor's son-in-law represents Salazar in connection with an anticipated CD27 recount. Plaintiff submits that each ground reinforces the other and creates "an extraordinary situation where the Constitution requires recusal." *Caperton*, 556 U.S. at 887. Plaintiff acknowledges that *Scott* denied relief, but the factual situation was distinct. There, the official "has even recused himself from the Elections Canvassing Commission," *id.* at 1317; here, the Supervisor has publicly refused to recuse herself while professing uncertainty about her son-in-law's involvement, and while her own daughter and son-in-law appear before her as representatives of her son-in-law's law firm.

22. The political context reinforces the asserted risk in this particular contest. Official and joint elections-office Instagram posts praised the Trump presidential library project. (D.E. 1 ¶¶ 22-24; D.E. 1-1, PDF pp. 16, 18.) The Supervisor's verified Facebook page celebrated "Miami Dade County Republican Chairman Kevin Cooper." (D.E. 1 ¶ 26; D.E. 1-1, PDF p. 24.) Her post about the Miami-Dade rededication-to-God event stated that the elections office was represented "Under the leadership of Sen. Rene Garcia." His county district office organized the event. He is a former county Republican Party chairman. (D.E. 1 ¶ 27; D.E. 1-1, PDF pp. 26, 28-29.)

23. The Supervisor's official elections-office account stated: "As Supervisor of Elections, I do not advocate for or against constitutional amendments or candidates." (D.E. 1 ¶ 30; D.E. 1-1, PDF p. 40.) WLRN then reported her support for

Amendment 3 and her refusal to recuse following that advocacy; her personal Instagram account later celebrated the amendment's passage. (D.E. 1 ¶¶ 31-32; D.E. 1-1, PDF pp. 42-43, 45-46, 48.) Plaintiff does not contend that party affiliation or election to a partisan office alone requires recusal. These communications provide context for the Supervisor's winner announcement and family connection to the opposing candidate's lawyer. The claimed injury remains her participation as a decisionmaker in CD27. (D.E. 1 ¶¶ 34-36, 44-45.)

24. The Supervisor is sued in her official capacity to restrain her own participation in Canvassing Board determinations. "All that is required is that the official be responsible for the challenged action." *Schultz v. Alabama*, 42 F.4th 1298, 1315 (11th Cir. 2022) (quoting *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988)).

25. Plaintiff seeks relief for an asserted constitutional injury in the electoral process. Injunctive relief requires "the absence of an adequate remedy at law." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000). While § 102.141(1)(b), Fla. Stat., provides procedures to cure the recusal or disqualification of a canvassing board member, it is not self-effectuating or exhaustive.

**C. Plaintiff Faces Actual and Imminent Irreparable Injury**

26. Irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d

969, 973 (2d Cir. 1989))). The court there stated: "we reject the contention that merely counting ballots gives rise to cognizable injury." *Id.* at 1177. The threatened injury is the Supervisor's participation in contested CD27 determinations while presenting a serious, objective risk of bias. That includes voter-intent and ballot-validity decisions and, if an equipment error arises during a recount, her vote on correction, retesting, and whether tabulation may proceed. The relief seeks to prevent her participation in those decisions before they occur.

**D. The Balance of Harms and the Public Interest Favor Narrow Relief**

27. "A State indisputably has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (quoting *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989)). Florida law provides for a substitute when the supervisor "is unable to serve or is disqualified," while preserving the supervisor's advisory role. The Supervisor's duties outside the restraint would remain intact, and Salazar is not sought to be enjoined. Section 102.141(1)(b) provides: "If the supervisor of elections is unable to serve or is disqualified, the chair of the board of county commissioners must appoint as a substitute member a member of the board of county commissioners who is not a candidate with opposition in the election being canvassed and who is not an active participant in the campaign or candidacy of any candidate with opposition in the election being canvassed." It adds: "The supervisor, however, shall act in an advisory capacity to the canvassing board."

28. The public interest also favors the requested relief because it will foster public confidence in the election results. As things stand, the Supervisor refuses to recuse herself despite her own stated conclusion that Plaintiff's opponent has won the election, and despite her own son-in-law and daughter representing Plaintiff's opponent. Granting the relief sought will relieve those concerns amongst the public, including voters who supported *both* candidates, so that they will have greater confidence in the election results.

**E. Scope and Notice**

29. The primary relief bars the Supervisor, pending final judgment, from voting or acting as a deciding member on any CD27 matter, including any recount, on each asserted ground independently and on both cumulatively. Alternatively, Plaintiff seeks a restraint confined to CD27 provisional-ballot eligibility, vote-by-mail signature and protest determinations, voter-intent determinations on ballots properly presented to the Board, overvote and undervote determinations, and decisions concerning tabulation-equipment errors, correction, retesting, and whether recount tabulation must pause, may proceed or resume, or must be repeated under governing law. Both forms preserve the Supervisor's advisory function and duties outside the restrained voting and decision-making functions. Neither directs any nonparty, orders a stop or delay of the canvass or recount, changes a deadline, or decides a ballot or the winner.

## V. REQUEST FOR HEARING

30. Plaintiff seeks emergency treatment under Local Rule 7.1(d)(1). A ruling is requested immediately and certainly in advance of any recount procedures. If the Supervisor participates in the challenged determination before the Court can rule, the asserted participation injury will occur before the Court can prevent it.

## VI. CONCLUSION

31. Plaintiff respectfully requests that the Court, after notice, enter a preliminary injunction against the Supervisor, solely in her official capacity, as requested below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ELIOTT RODRIGUEZ, respectfully requests that the Court, after notice: (a) preliminarily enjoin Defendant ALINA GARCIA, solely in her official capacity, pending final judgment, from voting or otherwise acting as a deciding member of the Miami-Dade County Canvassing Board on any CD27 matter, including but not limited to any recount, voter-intent determinations on rejected or outstacked ballots properly presented to the Board, overvote and undervote determinations, and decisions concerning tabulation-equipment errors, correction, retesting, and whether recount tabulation must pause, may proceed or resume, or must be repeated under governing law; (b) alternatively, confine the restraint to the CD27 ballot and recount determinations identified above and in the order; (c) preserve the Supervisor's advisory function and duties outside the restrained voting and decision-making functions, cover whole-ballot eligibility, signature, or protest

rulings only insofar as they determine whether CD27 votes are counted, and specifically define the treatment of mixed-contest certification or omnibus votes without directing a nonparty or ordering a stop or delay of the canvass or recount; and (d) grant such further relief as is just and proper.

## CERTIFICATION OF EMERGENCY

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

/s/ Marc A. Burton
**Marc A. Burton**
Florida Bar No. 95318

**THE BURTON FIRM, P.A.**
20200 West Dixie Highway, Suite 902
Aventura, Florida 33180
Telephone: (305) 705-0888
Facsimile: (305) 705-0008
marc@theburtonfirm.com
pleadings@theburtonfirm.com

/s/ Jason B. Blank
**Jason B. Blank**
Florida Bar No. 28826

**HABER BLANK LLP**
888 South Andrews Avenue, Suite 201
Fort Lauderdale, Florida 33316
Telephone: (954) 767-0300
Facsimile: (954) 949-0510
jblank@haberblank.com
eservice@haberblank.com

/s/ Laura Faye Kelley
**Laura Faye Kelley**
Florida Bar No. 122047

**LFK IMMIGRATION PA**
8200 NW 41st Street, Suite 200
Doral, Florida 33166
Telephone: (305) 363-2844
Facsimile: (305) 808-3289
laura@lfkimmigration.com

/s/ J.C. Planas
**Juan-Carlos Planas**
Florida Bar No. 156167

**LAW FIRM OF JUAN-CARLOS PLANAS, P.A.**
8325 Southwest 118th Terrace
Miami, Florida 33156
Telephone: (850) 980-6542
jcplanas@planaslawfirm.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing motion was furnished on November 6, 2026 by email to Oren Rosenthal, Esq. as counsel for Defendant Alina Garcia, and to Robert Fernandez, Esq. as counsel for Defendant Maria Elvira Salazar.

/s/ Marc A. Burton
**Marc A. Burton**
Florida Bar No. 95318

**THE BURTON FIRM, P.A.**
20200 West Dixie Highway, Suite 902
Aventura, Florida 33180
Telephone: (305) 705-0888
Facsimile: (305) 705-0008
marc@theburtonfirm.com
pleadings@theburtonfirm.com

/s/ Jason B. Blank
**Jason B. Blank**
Florida Bar No. 28826

**HABER BLANK LLP**
888 South Andrews Avenue, Suite 201
Fort Lauderdale, Florida 33316
Telephone: (954) 767-0300
Facsimile: (954) 949-0510
jblank@haberblank.com
eservice@haberblank.com

/s/ Laura Faye Kelley
**Laura Faye Kelley**
Florida Bar No. 122047

**LFK IMMIGRATION PA**
8200 NW 41st Street, Suite 200
Doral, Florida 33166
Telephone: (305) 363-2844
Facsimile: (305) 808-3289
laura@lfkimmigration.com

/s/ J.C. Planas
**Juan-Carlos Planas**
Florida Bar No. 156167

**LAW FIRM OF JUAN-CARLOS PLANAS, P.A.**
8325 Southwest 118th Terrace
Miami, Florida 33156
Telephone: (850) 980-6542
jcplanas@planaslawfirm.com

Counsel for Plaintiff