**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:26-cv-27895-DSL**

**ELIOT RODRIGUEZ, in his Capacity as a candidate for United States Representative, District 27,**

**Plaintiff,**

**v.**

**ALINA GARCIA, in her official Capacity as Supervisor of Elections of Miami-Dade County and as a member of the Miami-Dade County Canvassing Board,**

**and**

**MARÍA ELVIRA SALAZAR, solely as an interested-party defendant,**

**Defendants.**
**_______________________________________/**

**MARÍA ELVIRA SALAZAR'S RESPONSE IN OPPOSITION TO PLAINTIFF'S AMENDED EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

Defendant María Elvira Salazar ("Representative Salazar"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 65 and Local Rule 7.1(c), files this Response in Opposition to Plaintiff's Amended Emergency Motion for Preliminary Injunction, ECF 8, and states:

## INTRODUCTION

Plaintiff asks this Court to remove the Miami-Dade Supervisor of Elections (the "Supervisor") from the County Canvassing Board (the "Board") for the remainder of the

Congressional District 27 (“CD27”) canvass and recount. Plaintiff identifies no unlawful ballot determination and no departure from the rules governing the count. Plaintiff claims instead that a qualified assessment on the status of the returns on election night and the Supervisor’s family relationship to one of Representative Salazar’s lawyers create a risk of bias so serious that the Constitution forbids her participation. Those circumstances do not require her recusal.

The constitutional standard requires an intolerable probability of actual bias. Plaintiff’s own authorities acknowledge that kinship ordinarily falls below that threshold, and binding Eleventh Circuit precedent holds that a familial relationship between judge and lawyer did not violate due process. The Supervisor’s then-current, qualified assessment cited by Plaintiff expressly acknowledged that a reversal remained “possible but not probable.” The allegedly offending relationship is between the Supervisor and counsel, not the Supervisor and candidate, and Plaintiff identifies nothing connecting it to the Supervisor’s exercise of her duties. The Board has already met once in this contest, on November 6, and Plaintiff identifies nothing it did wrong. ECF 8 at 6; ECF 8-1 at 1–3.

Without the required showing of bias, Plaintiff cannot establish either the constitutional violation or the irreparable injury on which his alleged emergency motion depends. Separately, the existence of a statutory, comprehensive, adequate post-election remedy further thwarts Plaintiff’s assertion of irreparable injury, the *sine qua non* of injunctive relief. Florida law provides mechanisms to address disqualification disputes and errors in the count, and the equities favor completing the canvass under the established rules. The motion should be denied.

## BACKGROUND

Plaintiff joined Representative Salazar solely as an interested-party defendant and seeks no relief against her[1]. ECF 1 at 3; ECF 8 at 2. Representative Salazar appears in order to protect her interest in the proper counting and certification of votes cast in her election.

The motion identifies that the unofficial returns as of November 5th, reflected 124,511 votes for Representative Salazar and 123,408 votes for Plaintiff, a margin of 1,103 votes out of 247,919, or approximately 0.445 percent. ECF 8 at 5. That margin falls within the threshold for a machine recount. § 102.141(7), Fla. Stat. A manual recount follows only if the second set of unofficial returns shows a margin of 0.25 percent or less. *Id.;* § 102.166(1), Fla. Stat. The published schedule identified a November 6th canvass and unofficial certification and reserved November 7th through 16th for a recount, as needed. ECF 8 at 5.

Florida assigns the canvass to a three-member board: a county judge, who serves as chair; the supervisor of elections; and the chair of the county commission, subject to statutory substitutions. § 102.141(1), Fla. Stat. The Board's proceedings are public, and candidates and political parties may have watchers observe the examination of ballots. § 102.141(2)(a), Fla. Stat. Signature-mismatch findings require a majority vote and proof beyond a reasonable doubt. §§ 101.68(2)(c)1, 101.048(2)(b), Fla. Stat. The Recount Procedures Manual also requires Board determinations by majority vote. ECF 8 at 4.

Plaintiff complains about the Supervisor's data-informed, real-time, election-night discussion or prognosis of the then-current returns, wherein the Supervisor explicitly qualified that

---

[1] Representative Salazar does not concede that she is properly named as a defendant and reserves the right to challenge her inclusion in that capacity. The Court need not resolve that issue to decide the present motion. Regardless of Representative Salazar's party status, Plaintiff has not established entitlement to a preliminary injunction and the motion should be denied.

discussion by noting that a reversal was "possible but not probable," and "usually the trend we see is what continues." ECF 8 at 6. The motion also alleges that Robert H. Fernandez, the Supervisor's son-in-law, represents Representative Salazar and attended the November 6th meeting with his wife. *Id.* Plaintiff's declaration describes a photograph of an observer sign-in sheet and expresses concern about impartiality. ECF 8-1 at 1–3. Neither the motion nor the declaration identifies a single ballot determination at the meeting that was questionable, much less a departure from any governing standard.

**LEGAL STANDARD**

A preliminary injunction requires a substantial likelihood of success on the merits, irreparable injury absent relief, a favorable balance of harms, and consistency with the public interest. *GeorgiaCarry.org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1322 (11th Cir. 2015). The movant bears the burden on each element. *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). Irreparable injury must be actual and imminent, not remote or speculative, and its absence independently defeats the motion. *Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000) (*en banc*).

Where, as here, an injunction seeks more than maintenance of the status quo, the Plaintiff bears a heavier burden. *See Powers v. Sec'y, Fla. Dept. of Corr.*, 691 F. App'x. 581, 583 (11th Cir. 2017) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."). Despite couching it to the contrary, the relief Plaintiff seeks disrupt the status quo by mandating that the County Commission Chair replace the Supervisor on the Canvassing Board and have the recount proceed, and conclude, in her absence. Once done, this cannot be undone. *Singh v. Berger*, 56 F.4th 88, 95 (D.C. Cir. 2022) ("Bearing in mind that a grant of

preliminary relief could prove to be 'mistaken' once the merits are finally decided, . . . courts are institutionally wary of granting relief that disrupts, rather than preserves, the status quo, especially when that relief cannot be undone if the non-movant ultimately wins on the merits.").

## ARGUMENT

### I. Plaintiff has not shown a substantial likelihood that the Supervisor's participation violates due process.

#### a. The standard for constitutional recusal is high and Plaintiff does not meet it.

Representative Salazar does not contest standing under *Bost v. Illinois State Board of Elections*, 607 U.S. 71, 76, 82-83 (2026). But *Bost* does not inform the merits of Plaintiff's preliminary injunction request because there the Court addressed a candidate's right to challenge vote-counting rules, not whether an election official's participation violates due process.

Due process requires recusal when a decisionmaker has a direct, personal, substantial pecuniary interest in the outcome. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009). Even without a financial interest, recusal is required when the circumstances, viewed objectively, create a probability of actual bias that is "too high to be constitutionally tolerable." *Id.* at 877 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Matters of kinship ordinarily remain questions of legislative discretion, and judicial codes deliberately demand more than the Constitution does. *Id.* at 876, 889–90.

Plaintiff acknowledges this framework. ECF 8 at 9–10. His burden is therefore to establish an intolerable probability of actual bias, not merely a basis for questioning the Supervisor's impartiality.

**b. The Supervisor's relationship to counsel gives her no stake in the outcome and requires no recusal.**

The familial relationship is undisputed. ECF 8 at 6. However, it connects the Supervisor to counsel, not to a candidate. Plaintiff identifies no financial or outcome-dependent interest the Supervisor holds in CD27 and no arrangement, obligation, or other circumstance linking Mr. Fernandez's representation to the Supervisor's statutory duties. Although a pecuniary stake is not required, Plaintiff identifies no comparable circumstance of the kind *Caperton* addressed. 556 U.S. at 877–84. The relationship is the whole of his showing. And the Eleventh Circuit has held that such a relationship falls short of a due process violation. *Davis v. Jones*, 506 F.3d 1325, 1334-37 (11th Cir. 2007) (holding that due process was not violated by a judge presiding over a hearing in a case where his brother was one of the prosecutors).

While due process provides the standard for this Court's analysis, not even the election code prohibits the alleged relationship. Section 102.141(1) disqualifies a canvassing board member who is an opposed candidate or an active campaign participant. The Florida Election Code does not disqualify a canvassing board member because a relative represents a candidate. Plaintiff's rule would. While Judicial Canon 3E(1)(d)(ii) requires judicial recusal when a relative acts as counsel, the Supervisor is not a judge and that broader judicial standard does not govern her by virtue of her Board membership. More importantly, even a violation of the canon does not establish a violation of due process. *See Davis v. Jones*, 506 F.3d 1325, 1336 (11th Cir. 2007) ("More importantly, this Court and other circuits uniformly have concluded that the federal recusal statute establishes stricter grounds for disqualification than the Due Process Clause." (quoting *Del Vecchio v. Illinois Dep't of Corr.*, 31 F.3d 1363, 1371–72 (7th Cir. 1994)).

In short, "[t]he Supreme Court has never rested the vaunted principle of due process on something as subjective and transitory as appearance." *Davis v. Jones*, 506 F.3d 1325, 1335 (11th Cir. 2007). This Court should decline Plaintiff's invitation to do so.

Mr. Fernandez's attendance at the November 6th meeting adds no evidence of bias. Florida permits candidate watchers at canvassing meetings and candidate representatives during manual recounts. §§ 102.141(2)(a), 102.166(5)(d)6, Fla. Stat. The motion identifies his presence but it contains no suggestion of improper communication with the Supervisor, preferential treatment, or any departure from clear governing procedure. ECF 8 at 6. Mr. Fernandez's attendance is consistent with the public process the statute provides.[2]

**c. The qualified election night discussion does not meet the high standard for recusal.**

The motion attributes a statement to the Supervisor that Representative Salazar was the winner "with or without a recount," but acknowledges her significant qualifications: a reversal was "possible but not probable," and "usually the trend we see is what continues." ECF 8 at 6. Read together, those statements reflect the Supervisor's then-current assessment of the aggregate result informed by the unofficial returns. The statements fall well short of announcing how a disputed signature, provisional ballot, or unreadable mark will be decided.

Plaintiff infers that the Supervisor will use later rulings to confirm her then-current, qualified assessment. ECF 8 at 9. But the qualification expressly acknowledged that the outcome remained open. Such statement is not the making of a due process violation.

As to the Supervisor's refusal to recuse: "There is no conflict," that statement is accurate.

[2] Mr. Fernandez is an experienced election law expert who has practiced in this area for the past twenty (20) years and has handled at least a dozen recounts all throughout the State of Florida. Moreover, Mr. Fernandez has provided legal services to the Salazar campaign throughout this election cycle.

Administrative decisionmakers are presumed honest and impartial. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Plaintiff identifies no departure from a statute, rule, or procedure in this election and no error in the November 6th canvass. The qualified prognosis does not overcome that presumption.

While *League of Women Voters of Florida v. Scott*, 366 F. Supp. 3d 1311 (N.D. Fla. 2018), recognized the proposition that constitutional recusal principles can reach nonjudicial officials, it denied relief where the Governor's challenged statements were made as a candidate and he had recused himself from the Elections Canvassing Commission. *Id.* at 1316 n.6, 1317. Plaintiff argues that *Scott* supports the injunction because here the Supervisor remains on the Board and spoke in her official capacity. ECF 8 at 9, 11. Plaintiff's invocation of *Scott* affords him no traction. The distinctions identified by Plaintiff do not establish that the Supervisor's remark creates an intolerable probability of bias. Such a showing remains necessary and is absent here.

**d. The Supervisor's record shows evenhandedness and the two circumstances together add nothing to support Plaintiff's claims.**

Plaintiff argues that the qualified assessment and relationship reinforce each other. ECF 8 at 10–11. Of course, circumstances must be considered together, but even so, these circumstances combined do not supply the missing probability of actual bias. The relationship does not turn the prognosis into a commitment. The data-informed, qualified assessment would mean the same thing if Mr. Fernandez did not serve as one of the counsel for Representative Salazar. Nor does a then-current assessment concerning the returns show that counsel's relationship will influence the count. The combined circumstances do not establish the extraordinary constitutional deprivation required in a state election dispute. *Curry v. Baker*, 802 F.2d 1302, 1314–16 (11th Cir. 1986).

The Supervisor's relations with Plaintiff's counsel, Juan-Carlos Planas, further unravel Plaintiff's already inadequate inferences. Mr. Planas, who signed the motion, was the Democratic

nominee against the Supervisor in the 2024 partisan election for Miami-Dade County Supervisor of Elections[3]. If a personal connection to counsel establishes intolerable bias (*Davis* establishes it does not) then a former electoral opponent presents a comparable analogy to the present case. Setting aside *Davis*, as a factual matter, the Supervisor's evenhanded treatment of her former opponent's clients undermines the inference that her relationship with Mr. Fernandez will govern her decisions such that it rises to the requisite level of probability of actual bias. While Mr. Planas may disagree with the Supervisor's decisions, he has not ever attempted to establish a violation of law against her in court.

The unverified but cited social-media posts add no connection to CD27. They concern a presidential library, a former county party chairman, and a constitutional amendment. ECF 8 at 11–12. Plaintiff concedes that party affiliation alone does not require recusal and quotes the Supervisor's statement that she does not advocate for or against candidates. *Id.* Those posts identify no CD27 ballot, ruling, or statement supporting the alleged bias.

The Board's own proceedings on November 7th test Plaintiff's theory against actual events. The Board conducted a machine and manual recount of the City of Doral Councilmember, Seat 2 race. (Exhibit 1, Canvassing Board Results Sheet). Mr. Planas represented Maureen Porras. Mr. Fernandez represented Fernanda Gomes. The Supervisor sat as a member of the Board, the Board made voter-intent determinations on overvotes and undervotes in the manual recount, and it certified Ms. Porras as the winner by twelve votes. Ex. 1. Under the Plaintiff's theory, the results should have gone the other way.

---

[3] Mr. Planas also serves as the General Counsel to the Miami-Dade Democratic Party. https://www.miamidadedems.org/partyleadership (last visited November 8, 2026). The Court may take judicial notice of the party's published roster. Fed.R.Evid. 201(b)(2).

**e. Plaintiff's evidence cannot carry the inference he asks the Court to draw.**

Plaintiff's declaration supplies no firsthand account of the prognosis itself. Instead, he states that he read it in the media. ECF 8-1 at 1. The sign-in sheet establishes attendance at a public meeting, and his stated concern expresses the conclusion he asks the Court to draw. *Id.* at 2–3. Although hearsay may be considered at this stage, *Levi Strauss & Co. v. Sunrise International Trading Inc.,* 51 F.3d 982, 985 (11th Cir. 1995), the reports describe a qualified then-current, data-informed prognosis and a refusal to recuse, not a commitment to decide ballots for Representative Salazar. ECF 8 at 6.

**II. Plaintiff has not shown actual and imminent irreparable injury.**

In *Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000) (*en banc*), the Eleventh Circuit declined to presume irreparable harm from the assertion of a constitutional claim and rejected the proposition that counting ballots itself establishes injury. Plaintiff must show harm that is actual and imminent. He defines that harm as participation by a decisionmaker whose bias the Constitution will not tolerate. ECF 8 at 12–13. Representative Salazar does not dispute that a litigant who establishes such a conflict need not await an adverse ruling. *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 883–84 (2009). However, the claimed injury here depends on an unconstitutional conflict of interest which (as documented in Section I) is absent. On this record, the Supervisor's continued participation is the ordinary operation of the canvass under clear and well-established Florida law. It is not irreparable harm.[4] Nor is it imminent. The margin is 1,103

[4] Plaintiff filed ECF 8 at 5:08 p.m. on Friday, November 6, certifying an emergency but expressly declining to seek a temporary restraining order. ECF 1-2, 17. He has not moved to shorten time under Local Rule 7.1(c) or proposed an expedited briefing schedule. On Saturday, counsel emailed the Clerk's after hours address asking how to bring the motion before a judge. Ex. 2. On Sunday, counsel emailed the chambers demanding consideration today or, at the latest tomorrow, while asking the Court to advise what further filing, briefing, or hearing was required. Ex. 3. Local Rule 7.7 prohibits unsolicited requests for relief by correspondence. Plaintiff demands the Court's

votes. A manual recount requires a margin of 0.25 percent, about 620 votes. §102.166(1), Fla. Stat. Plaintiff must gain roughly 480 votes in a machine retabulation before the Board even considers a single vote for a manual recount.

To the extent the motion rests on a fear that the count will be wrong, that fear is speculation, and Florida does not leave supervisor of elections compliance to chance. The Board, not the Supervisor alone, conducts the recount. § 102.141(7), Fla. Stat. The Department of State issues binding recount procedures and may direct compliance. § 102.141(7)(a), Fla. Stat.; Fla. Admin. Code ch. 1S-2. Candidates and parties are entitled to observe. § 102.141(7)(e), Fla. Stat. A supervisor of elections who fails to perform a ministerial duty is subject to mandamus, and one who commits misfeasance, malfeasance, or neglect of duty is subject to suspension by the Governor and removal by the Senate. Art. IV, § 7(a), Fla. Const.; § 112.51, Fla. Stat. Any candidate who believes the count was tainted may contest the certification. § 102.168, Fla. Stat. Plaintiff has invoked none of these remedies and identifies no reason they would fail.

Federal courts have denied preliminary injunctions for failing the irreparable injury prong in light of section 102.168, Florida Statutes. *See Touchston v. McDermott*, 234 F.3d 1130, 1132-33 (11th Cir. 2000) (denying injunction pending appeal to stop manual recount of ballots because irreparable injury prong not met, noting the detailed election dispute procedures enacted by the state and specifically citing 102.168, Florida Statutes); *Siegel v. LePore*, 120 F. Supp. 2d 1041, 1053 (S.D. Fla.), aff'd, 234 F.3d 1163 (11th Cir. 2000) (denying request for injunction, noting the

---

intervention before Monday at 10 a.m. without having requested a briefing schedule that would allow both Defendants, one of which is in the midst of fulfilling her statutory canvassing duties, to respond before then. The failure to follow applicable rules further supports denial of this Motion.

"entire process" outlined in section 102.168, and thus, plaintiff's failed to establish that they lack an adequate remedy in state court).

**III. Florida's corrective process confirms that the electoral process is not fundamentally unfair.**

Courts evaluate the electoral process as a whole, including mechanisms available to correct an error. *Curry v. Baker,* 802 F.2d 1302, 1314-17 (11th Cir. 1986). A disagreement over recusal does not by itself make the electoral process fundamentally unfair. Florida provides for replacing a disqualified supervisor of elections. § 102.141(1)(b), Fla. Stat. As set forth by the Florida Division of Elections, the member ordinarily makes the initial disqualification determination and a disputed claim may require judicial resolution. Fla. Div. of Elections Op. DE 15-03, at 2 (Oct. 26, 2015). Plaintiff's observation that substitution is not self-executing does not establish a defect in that process. ECF 8 at 12. He has not sought resolution in state circuit court.

After certification, Section 102.168 permits an election contest for misconduct, illegal votes, or rejected legal votes sufficient to change or place in doubt the result, with an immediate hearing. § 102.168(3)(a),(c),(7), Fla. Stat. That remedy provides a means to correct ballot determinations meeting the statutory requirements.

In sum, Florida's corrective mechanisms bear on the overall fairness of its process. And Plaintiff has not shown that he has even attempted to invoke them, much less that those mechanisms are inadequate.

**IV. The equities and public interest favor completing the canvass under the established rules.**

*Bost* recognizes a candidate's interest in an election conducted under "the preordained rules" and in the legitimacy of its result. *Bost*, 607 U.S. at 78-79. Representative Salazar shares that interest. Removing an official from the canvass of her election on this record would cast doubt

on the impartiality of the count regardless of how a substitute voted. *Bost* recognizes the concrete harm that a clouded result can impose on a candidate. *Id.* at 80.

*Bost* reiterates the caution against changing election rules near an election and the greater costs to public acceptance when intervention follows the count. *Id.* at 80 (discussing *Purcell v. Gonzalez,* 549 U.S. 1, 4–5 (2006) (per curiam)). Plaintiff seeks intervention during the count. His claim that removal would promote public confidence overlooks the consequences of declaring an elected official constitutionally unfit to participate based on a qualified assessment and a family relationship on this scant record, especially during a preliminary injunction stage of the proceedings. ECF 8 at 14.

The order would also affect more than the Supervisor. Plaintiff claims that the relief he seeks does not direct any nonparty or change any deadline. ECF 8 at 14–16. Not so. Section 102.141(1)(b) assigns the Supervisor's replacement to the County Commission Chair, a nonparty. The motion identifies neither a replacement nor a workable method for contest-specific substitution when the Board acts on several races together. The injunction would plainly reorganize the Board during the recount.

The statutory safeguards described above already govern the Board's decisions. §§ 102.141(1),(2)(a); 101.68(2)(c)1, Fla. Stat. Where no constitutional conflict is shown, replacing a statutory member introduces disruption without a corresponding constitutional benefit.

## V. The alternative injunction requires the same showing the Plaintiff has not made and leaves its own scope undefined.

The alternative request excludes the Supervisor from fewer functions but rests on the same insufficient circumstances and inferences. ECF 8 at 14–16. Narrowing the relief does not shore up the evidentiary shortcoming on which it is based. Moreover, the scope of the suggested relief remains unclear and unworkable. Rule 65(d)(1)(B)–(C) requires the injunction itself to state its

terms specifically and describe the restrained acts in reasonable detail. An order cannot leave election officials to draw those boundaries during a recount. Even if the Court resolved them, Plaintiff would still need to establish likely success and irreparable harm. He has established neither.

**CONCLUSION**

Plaintiff seeks the Supervisor's removal because she described the returns accurately and because her son-in-law is one of the attorneys who represent the candidate who is ahead. Neither circumstance, alone nor together, establishes a constitutionally intolerable probability of actual bias. Narrowing the injunction does not cure the failure. Representative Salazar respectfully requests that the Court deny Plaintiff's Amended Emergency Motion for Preliminary Injunction, ECF 8, including the alternative request for relief.

Respectfully submitted,

*/s/ Leonard Collins*_________

Leonard M. Collins (FBN: 423210)
Jason L. Unger (FBN: 0991562)
GrayRobinson, P.A.
301 South Bronough Street, Suite 600
Tallahassee, Florida 32301
Telephone: 850-577-9090
leonard.collins@gray-robinson.com

Robert H. Fernandez, Esq. (FBN:91080)
RHF LAW FIRM, LLC
8440 Grand Canal Drive
Miami, Florida 33144
Telephone: 305-215-2264
rfernandez@rhflawfirm.com

*Attorneys for Maria Elvira Salazar*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

*/s/ Leonard M. Collins*
Leonard M. Collins (FBN: 423210)
GrayRobinson, P.A.