**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **ELIOT RODRIGUEZ**,<br><br>*Plaintiff*,<br>v.<br><br>**ALINA GARCIA,** in her official capacity as Miami-Dade County Supervisor of Elections and member of the Miami-Dade County Canvassing Board; **and MARÍA ELVIRA SALAZAR,** solely as an interested-party defendant,<br><br>*Defendants*. | Case No. 1:26-cv-27895 |

**<u>DEFENDANT ALINA GARCIA'S RESPONSE IN OPPOSITION TO PLAINTIFF'S AMENDED EMERGENCY MOTION FOR PRELIMINARY INJUNCTION</u>**

Florida county canvassing boards are unique in their composition and creation. A county canvassing board consists of an elected county court judge who serves as chairperson, the partisan chairperson of the county board of county commissioners[1], and a partisan supervisor of elections. The conflict-of-interest rules for canvassing boards have also similarly been unique. In fact, before being prohibited by a change in Florida law, county canvassing board members were intended to canvass elections and pass on the legality of the ballots even when their own re-election was on those ballots. *See State ex rel. Hutchins v. Tucker*, 106 Fla. 905, 912 (Fla. 1932) (denying request to disqualify member of canvassing member who was a candidate in election being canvassed). It is thus telling that Plaintiff Eliott Rodrguez ("Rodriguez") does not cite to one provision of Florida law or even a single case applicable to county canvassing boards that requires or even suggests that any of the alleged actions taken by Defendant Alina Garcia ("Supervisor Garcia") requires her

[1] In most counties in Florida, county commissioners are elected on a partisan basis. In Miami-Dade County they are not. *See Miami-Dade County Home Rule Charter*, Art. 3, Sec. 3-3.

to recuse herself as a member of the Miami-Dade County Canvassing Board for this election and to abstain from performing the job that the electors of Miami-Dade County elected her to do.

Instead, Rodriguez asks this Court for the extraordinary remedy of a preliminary injunction to remove an elected state official from a county canvassing board, mid-recount, days before the statutory deadline for reporting official results because he, as the presumptive losing candidate, does not feel Supervisor Garcia could be fair. While that refrain could be echoed by every losing candidate against every official that tallied the votes in their loss, a preliminary injunction in federal court is "an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir.1998)). He establishes none of them.

***First***, Rodriguez cannot show a substantial likelihood of success on the merits. His single claim arises under 42 U.S.C. § 1983, and a procedural due process claim built on a decisionmaker's alleged bias is not even complete "unless and until the State fails to provide due process." *Nat. Lands, LLC v. City of Boca Raton*, No. 23-11323, 2025 WL 3202902 (11th Cir. Nov. 17, 2025) (internal citation omitted). Florida already provides adequate process — in the form of a post-certification election contest in which the Canvassing Board is an indispensable party or, in the alternative, common-law certiorari. Plaintiff has invoked neither. The suit is also premature: Plaintiff points to no decision by Supervisor Garcia where he has been prejudiced or harmed and fails to identify any decision by Supervisor Garcia that could alter the outcome of the recount, so his claim rests on contingent future events that may never occur as Plaintiff fears. *Church v. City of Huntsville,* 30 F.3d 1332, 1337 (11th Cir.1994) ("a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely

conjectural or hypothetical—threat of future injury”). The Eleventh Circuit has held, on materially identical facts, that a biased decision-maker claim fails where an adequate state remedy exists, even if that remedy cannot itself order recusal. *See id*. at *3. And even on the merits, due process and Florida law compel recusal only in rare, extraordinary circumstances that Rodriguez does not allege or provide sufficient facts to support.

***Second***, Rodriguez likewise cannot show irreparable harm. The asserted injury “must be neither remote nor speculative, but actual and imminent.” *Siegel v. LePore*, 234 F.3d 1163, 1176–1177 (11th Cir. 2000) (internal quotation omitted). Rodriguez pleads only a prospective risk that the Supervisor will participate in determinations not yet made in a recount not yet begun, and the Eleventh Circuit has clearly rejected a claim “that merely counting ballots gives rise to cognizable injury." *Id.* at 1177. Nor can Plaintiff show the absence of an adequate remedy at law: Florida's post-election contest procedures and certiorari review can remedy any genuine defect after the fact. *Id.* (denying preliminary injunction regarding manual recount because “any alleged voter injury … can be adequately remedied later.”).

***Finally***, the balance of equities and the public interest weigh decisively against the injunction. The relief sought would reconstitute the composition of the canvassing board in the middle of a time-constrained recount governed by a strict statutory clock. *See* Fla. Stats. § 102.141(7)(c) (“The returns shall be filed … no later than 3 p.m. on the 9th day after any general election in which a recount was ordered by the Secretary of State [i.e., Thursday, November 12].”). The Supreme Court, in *Purcell v. Gonzalez*, 549 U.S. 1 (2006), has instructed that “federal district courts ordinarily should not enjoin state election laws in the period close to an election.” *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370–1371 (11th Cir. 2022) (internal quotation omitted). Additionally, the Constitution's design leaves the States — not the

federal courts — "in charge of" running their elections. *New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1284 (11th Cir. 2020).

The motion should be denied for what it is, a political dispute masquerading as a federal constitutional claim.

**<u>BACKGROUND</u>**

This action arises from the 2026 General Election for United States Representative, District 27 (CD27), in which Rodriguez is the defeated candidate under the unofficial results ("Unofficial Results"). Supervisor Garcia is the Miami-Dade Supervisor of Elections and, by operation of section 102.141(1), Florida Statutes, one of three members of the Miami-Dade County Canvassing Board ("Canvassing Board"). *See* Plaintiff's Amended Emergency Motion for Preliminary Injunction ("Motion") at 3; Fla. Stat. §102.141.

The Unofficial Results dated November 5, 2026, reflected 124,511 votes for Defendant Maria Elvira Salazar ("Salazar") and 123,408 votes for Rodriguez — a margin of approximately 0.445 percent, within the one-half-percent margin that triggers a recount under Fla. Stat. § 102.141(7). Motion at 5. The Canvassing Board's published schedule sets November 9, 2026 at 10 a.m. as the time for the machine recount. That recount must be completed and the second set of unofficial results transmitted to the Florida Department of State by November 12, 2026 at 3 p.m. *See* Fla. Stat. §102.141(7)(c).

Rodriguez's claim to unseat Supervisor Garcia rests on essentially two allegations. *First*, a Miami Herald article reported that, on election night, Garcia said, "María Elvira [Salazar] is the winner, with or without a recount," while also acknowledging that a reversal was "possible but not probable." While portrayed as a statement of bias, this comment is more of a simple restatement of the well-known fact of Florida recounts – margins of this magnitude do not typically change in

recounts. In fact, in 2018, during the machine recount of a similar margin in Governor Ron DeSantis' narrow election, counsel for Rodriguez announced on Twitter, "The numbers suggest that DeSantis' victory is extremely solid and it is EXTREMELY unlikely that a recount will change that." Juan-Carlos "JC" Planas (@jcp717), X November 9, 2018, 4:49 p.m. (attached hereto as Exhibit "A"). Based on those similar results and similar recount prospects, Mr. Planas even went on to admonish candidates to "refrain from these spectacles as it can only do harm to the brand." *Id*.

*Second*, the Supervisor's son-in-law, Robert Fernandez, represents Salazar in connection with any CD27 recount. *Id.* Critically, this is essentially the sum total of the support for this allegation. *Id.* There is no proffered evidence of any untoward relationship or even any financial incentive to Supervisor Garcia related to this representation and relationship. *Id.*

Critically absent from the motion is a single allegation of a single decision, statement, or act by Supervisor Garcia in the canvass of the 2026 General Election that has been anything other than in complete compliance with Florida law. Nor is there an example of a single objection made by any representative of the Rodriguez campaign of any Canvassing Board decision that changes the results of the election in any way. The reason those allegations are missing is because they do not exist.

Nevertheless, and in an absence of any harm and any citation to any law that would require it, counsel for Rodriguez's campaign sent a letter on November 5, 2026 demanding that Garcia recuse herself. *Id.* Supervisor Garcia declined, stating, "I will not recuse myself. There is no conflict" under Florida law. *Id.*

The recount that Rodriguez seeks to reshape is a public, regulated proceeding. *See* DS-DE 405, Recount Procedures Manual at 6 (attached hereto as "Exhibit B"). All recount procedures are

sunshine meetings, "open to the public," and members of the public, including the media, may observe. *Id*. Every "canvassing board determination or decision must be by majority vote"; the Board's activities in determining voter intent are recorded; and "[a]ll recordings and minutes are public record." *Id*. at 5-6. Each affected candidate is entitled to representatives, who may make "reasonable objections" during any Canvassing Board proceeding and any recount. *Id*. at 8-9. In fact, all of the Canvassing Board's proceedings to date, including the November 6, 2026, canvassing-board meeting where Plaintiff's representatives were present, have been conducted in the open under similar procedures. Yet, Plaintiff identifies no defect or harm to Rodriguez that Garcia's participation raised at any such public proceeding.

The recount is also time-constrained. It must be completed so as to leave the Board sufficient time to "submit on forms or in formats provided by the division a second set of unofficial returns to the Department of State … no later than 3 p.m. on the 9th day after any general election in which a recount was ordered by the Secretary of State." Fla. Stat. §102.141(7)(c).

## LEGAL STANDARD

"A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Lepore* 234 F.3d at 1176. A preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites," and its grant "is the exception rather than the rule." *Id*. And a showing of irreparable injury is "the sine qua non of injunctive relief," so that even a movant who establishes likelihood of success cannot obtain relief without it. *Id*.

That burden is heavier still here. Under the "Purcell principle," "federal district courts ordinarily should not enjoin state election laws in the period close to an election." *League of Women Voters*, 32 F.4th at 1370-71. For cases controlled by that analysis, the party seeking relief carries a "heightened" burden and must show that its position on the merits is "entirely clearcut." *Id.* Plaintiff cannot carry the ordinary burden, let alone the heightened one.

## ARGUMENT

### I. Plaintiff cannot show a substantial likelihood of success on the merits.

Rodriguez's motion fails at the first element for four independent reasons: (1) his sole claim under § 1983 is not cognizable because state law affords an adequate remedy that Rodriguez has simply not availed himself of; (2) any claim he would have, whether in federal or state court, is simply unripe; (3) on the merits, due process does not require Supervisor Garcia's recusal on these facts; and (4) Supervisor Garcia's single, non-dispositive vote on a transparent, majority-vote board containing two county court judges cannot invalidate the recount. Independently, any one of these defeats the likelihood-of-success showing and collectively they demonstrate that this is a political dispute not a valid legal claim.

#### A. There is no cognizable § 1983 claim because Florida affords an adequate remedy Rodriguez has not used.

The sole claim in Rodriguez's Complaint is a procedural due process claim under 42 U.S.C. § 1983, and the Supreme Court has held that such a claim "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, (1990). Similarly, in *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994), an *en banc* panel of the Eleventh Circuit held that a State "may cure a procedural deprivation by providing a later procedural remedy," and it is only when the State refuses adequate process that

an actionable § 1983 violation arises. *See also Cotton v. Jackson*, 216 F.3d 1328, 1330–1331 (11th Cir. 2000) ("This rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to 'remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts' before being subjected to a claim alleging a procedural due process violation."). Because Florida affords Rodriguez adequate remedies for any asserted claim in other forums that he has failed to use, he has no substantial likelihood of success here. *Id.*

Critically, Rodriguez's theory — that one member of a multi-member body harboring a purportedly disqualifying bias creates a due process concern— has been expressly rejected by the Eleventh Circuit in *McKinney*. There, even assuming the plaintiff "suffered a procedural *deprivation* at the hands of a biased Board," the en banc court held he had "not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation." *Id. See also Nat. Lands, LLC v. City of Boca Raton*, No. 23-11323, 2025 WL 3202902, at *2 (11th Cir. Nov. 17, 2025) (holding that a "demonstration that the decisionmaker was biased . . . is not tantamount to a demonstration that there has been a denial of [federal] procedural due process," instead the federal claim "arises only if a State lacks adequate remedial procedures."). In addition to *McKinney*, a more recent decision by the Eleventh Circuit rendered a similar result. *See Nat. Lands, LLC v. City of Boca Raton*, No. 23-11323, 2025 WL 3202902, at *2 (11th Cir. Nov. 17, 2025). In *Nat. Lands, LLC*, the Eleventh Circuit admonished a trial court for prematurely granting constitutional relief and held that the state must have "the opportunity to cure procedural defects caused by its subdivisions before federal intervention," and, until the state refuses to do so, no constitutional violation has occurred. *Id.*

Here, Florida law provides Rodriguez with at least two adequate remedies to cure any alleged defect in the recount process.

***First***, Fla. Stat. § 102.168 provides that "the certification of election or nomination of any person to office .. may be contested in the [state] circuit court by any unsuccessful candidate for such office or nomination thereto or by any voter qualified to vote in the election related to such candidacy or constitutional amendment, or by any taxpayer, respectively. The statute provides various grounds upon which any party can bring this election challenge, and it also makes clear that, in any such lawsuit, the county's Canvassing Board, the state's Election Canvassing Commission, and the winning candidate are all indispensable parties to such action. *Id.* Furthermore, "any candidate, qualified elector, or taxpayer presenting such a contest to a circuit judge is entitled to an immediate hearing." *Id.* Therefore, if Rodriguez believes that any valid grounds for challenging the election result exist (and, to date, he has offered none), then the appropriate vehicle to raise such a complaint would be through a state court action under Fla. Stat. § 102.168 ***after*** the result are certified, not a § 1983 claim in federal court ***before*** the election has even concluded.

*Second*, the Eleventh Circuit has also recognized that Florida's common law certiorari, "is generally an adequate state remedy" to address claims that a decisionmaker should have recused. *Cotton v. Jackson*, 216 F.3d 1328, 1331–1332 (11th Cir. 2000). And *Nat. Lands, LLC,* the most recent Eleventh Circuit authority on this subject, forecloses the response that certiorari is inadequate because it cannot compel recusal. *Nat. Lands, LLC,* 2025 WL 3203902. In *Nat. Lands, LLC*, a plaintiff alleged bias among city council decisionmakers and obtained a district court judgment declaring them biased and enjoining their participation. *Id.* The Eleventh Circuit subsequently reversed, holding that the plaintiff had "no viable claim because it did not use the

available and adequate State remedy" namely Florida certiorari. *Id.* Addressing recusal directly, the court explained that "[e]ven if . . . certiorari review does not permit state courts to order the recusal of city officials, a state court quashing a decision because of bias places significant pressure on the [body] to conform its conduct to ensure due process." *Id.* Thus, because "[t]he certiorari process could have remedied the precise harm" alleged — "a procedurally defective, biased hearing," the plaintiff could not "pursue its procedural due process violation in federal court." *Id.* Though unpublished, the decision in *Nat. Lands, LLC* applies the binding rule announced by the Eleventh Circuit in *McKinney* to the participation of an allegedly biased board member in a manner materially identical here.

Rodriguez's failure to use either of these processes prior to raising this lawsuit defeats his claim. "[I]f adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." *Cotton*, 216 F.3d at 1330–1331. This is not an exhaustion requirement; it is a rule that the constitutional violation is not complete until the State refuses adequate process. *Id.* at 1331, n. 2. But here, Rodriguez first turned to federal court instead of waiting to invoke the proper remedies that state law makes available and federal law requires. On this record he cannot show a substantial likelihood of success.

### B. The claim is premature and unripe; Florida's post-certification election contest is the adequate remedy.

As previously mentioned, Florida channels any challenge to a canvass or recount into a post-certification contest in the circuit court under Fla. Stat. § 102.168, and this post-election remedy confirms that this federal suit is premature. Section 102.168 permits an unsuccessful candidate or any qualified elector to contest a certification in circuit court on specifically enumerated grounds — including "[m]isconduct, fraud, or corruption on the part of any election

official or any member of the canvassing board sufficient to change or place in doubt the result of the election" — filed "within 10 days after midnight of the date the last board responsible for certifying the results officially certifies the results." Fla. Stat. § 102.168. The statute also requires that "[t]he canvassing board responsible for canvassing the election is an indispensable party defendant in county and local elections," and the successful candidate is likewise an indispensable party. *Id.* A contestant presenting such a challenge "is entitled to an immediate hearing." *Id.*

That remedy is not yet available and therefore makes this suit premature. As the Florida courts have explained, Fla. Stat. § 102.168 "may be invoked only after election results have been certified by the canvassing board and a complaint has been filed in the circuit court by an unsuccessful candidate or nominee." *Morse v. Dade Cnty. Canvassing Bd.*, 456 So. 2d 1314, 1316 (Fla. 3rd DCA 1984).

**C. Due process does not require Supervisor Garcia's recusal on the allegations alleged in the Motion**

Even if the Court reached the merits, Rodriguez could not show a likelihood of success, because due process requires recusal only under "objective standards" that apply when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872 (2009) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46–47 (1975)). That standard is intentionally narrow as political disputes should be resolved in the political arena and not through federal lawsuits. For that reason, the Supreme Court has confined constitutionally compelled recusal to "an extraordinary situation," on facts "extreme by any measure," and its application "will . . . be confined to rare instances," because "[t]he Due Process Clause demarks only the outer boundaries" of disqualification. *Caperton*, 556 U.S. 868, 887. The recognized categories are where the adjudicator "has a

pecuniary interest in the outcome" or "has been the target of personal abuse or criticism from the party before him." *Withrow*, 421 U.S. at 47.

In any event, even if a plaintiff were to invoke one of those two recognized categories, any bias challenge "must [first] overcome a presumption of honesty and integrity in those serving as adjudicators" and Rodriguez cannot do so here. *Id.* That presumption applies to non-judicial officials as well because "in the administrative context, administrators are presumed to be unbiased," and administrative proceedings are "more tolerant of partiality than judicial hearings." *Van Meter v. City of Lanett*, Ala., 504 F. Supp. 2d 1229, 1233 (M.D. Ala. 2007); *Dirt, Inc. v. Mobile County Comm'n,* 739 F.2d 1562, 1566 (11th Cir.1984) (noting that "the standards governing administrative proceedings are far more relaxed than those controlling judicial hearings").

As noted above, Rodriguez's claim to unseat Supervisor Garcia rests on essentially two allegations: (1) a Miami Herald article reported that, on election night, Garcia said, "María Elvira [Salazar] is the winner, with or without a recount," while also acknowledging that a reversal was "possible but not probable"; and (2) Supervisor Garcia's son-in-law serves as legal counsel for Salazar. Neither of these allegations, however, comes close to rebutting that presumption or meeting the constitutional standard.

First, the son-in-law allegation fails under binding Eleventh Circuit authority. The Supreme Court has long cautioned that "matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion." *Davis v. Jones*, 506 F.3d 1325, 1333–1334 (11th Cir. 2007) (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 523 (1927)). When applying that principle in *Davis*, the Eleventh Circuit rejected a due process challenge to a judge who presided over pretrial proceedings in a case in which his own brother

served as one of the State's prosecutors, because the brother "had no pecuniary interest in the outcome of the case." *Davis*, 506 F.3d 1325, 1336–1337. There, the court emphasized that most disqualification questions "do not rise to a constitutional level" and that due process does not turn on "the mere appearance" of partiality. *Id.* If a judge's sibling prosecuting the very case does not offend due process, a Supervisor's son-in-law representing an opposing candidate — a more attenuated relationship, with no pecuniary interest to Supervisor Garcia alleged — cannot. Surely the due process afforded to a criminal defendant cannot be less than the due process afforded to a losing candidate.

Supervisor Garcia's statement regarding Rodriguez's prospects after the Unofficial Results fares no better, as the very authority Plaintiff invokes confirms. In *League of Women Voters of Fla. v. Scott*, 366 F. Supp. 3d 1311, 1315 (N.D. Fla. 2018), the court applied the *Caperton* standard to a non-judicial election official and nonetheless denied relief.. It held that "[c]onstitutionally required recusals are rare and arise in 'extraordinary situation[s],'" and that although the official in that case "ha[d] toed the line . . . he ha[d] not crossed the line." *Id.* Indeed, the district court in *League of Women Voters of Fla.* characterized the official's statements as "haphazard and reckless." *Id.* at 1318. To wit, the official was a sitting governor who "ask[ed]" state law enforcement to investigate two counties, Broward County and Palm Beach County," and asserted that "'rampant fraud' existed in the counties, despite the presence of election monitors from the Florida Department of State who had not reported any criminal activity," all while still being a candidate in an election that was slated for a manual recount.. *Id.* at 1313. Yet, despite these facts, the district nevertheless denied a preliminary injunction.

A public comment predicting a likely outcome, coupled with an indirect family connection, is the type of fact that *League of Women Voters of Fla.* and *Larkin*, hold insufficient — it is not

the extraordinary, pecuniary circumstance that the Constitution requires in order for there to be a federal due process claim. *See Caperton*, 556 U.S. 868 at 887.

D. **One member's alleged bias cannot invalidate a transparent, majority-vote recount**

Rodriguez's theory also fails because Supervisor Garcia only holds one of three seats on a canvassing board that decides by majority vote, and her single, non-dispositive vote cannot render the Canvassing Board's determinations unconstitutional. The Eleventh Circuit's no-imputation rule is well settled: "[a]n unconstitutional motive on the part of one member of a three-member majority is insufficient to impute an unconstitutional motive to the Commission as a whole." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). The court reaffirmed that rule recently, holding that where policymaking authority rests with a multimember body, a plaintiff must allege that "a majority" of the members acted "for an unconstitutional reason," and allegations about fewer than a majority are "insufficient to impute an unconstitutional motive" to the body "as a whole." *McCarthy v. City of Cordele, Georgia*, 111 F.4th 1141, 1146 (11th Cir. 2024). Applying the same principle in *Van Meter v. City of Lanett*, a federal district court in Alabama held that a council member's alleged bias "was not outcome-determinative" where the body would have reached the same result without his vote, and that "[a]n improper motive behind a single vote cannot impute an impermissible motive to the entire council, even if the other members of the majority knew about the mayor's bias or were affected by it." *Van Meter v. City of Lanett, Ala.*, 504 F. Supp. 2d 1229, 1233–1234 (M.D. Ala. 2007).

Those principles control here. Every Canvassing Board "determination or decision must be by majority vote," Exhibit B at 5, and the complaint pleads no bias by either of the county court judges who csit on the Canvassing Board. Supervisor Garcia's alleged predisposition therefore cannot control a determination or be imputed to the Board as a whole.

*Williams v. Pennsylvania*, does not help Plaintiff here. Its structural-error rule applies only where “the same person serves as both accuser and adjudicator in a case” — specifically, where a judge “earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case.” *Williams v. Pennsylvania*, 579 U.S. 1, 14 (2016). Supervisor Garcia is neither an accuser nor a sole adjudicator. She is one voting member of a transparent, majority-vote board, and that rule does not reach her.

Finally, the recount's built-in safeguards confirm that the process afforded meets—and exceeds—any constitutional requirements. The proceeding is "open to the public," every determination is "by majority vote," the Board's voter-intent determinations are recorded and "[a]ll recordings and minutes are public record," and each affected candidate is entitled to representatives who may make "reasonable objections" during the recount. Exhibit B at 8-9. Those safeguards are reinforced by the governing recount regulations and procedures. *Id*.. In fact, all the Canvassing Board's proceedings to date have occurred at open public meetings, and Rodriguez identifies no contemporaneous objection that he or any of his representatives have raised to any decision by Supervisor Garcia at any time. That is more due process than the Constitution requires, and it is backed by an adequate post-deprivation remedy should any genuine defect emerge.

Rodriguez thus has no hope of showing substantial likelihood of success on the merits of his claim in its substance, procedure or the law.

## II. Rodriguez cannot show irreparable harm.

Independent of the merits, the Motion fails because Rodriguez cannot establish irreparable harm. Even a movant who establishes a likelihood of success cannot obtain a preliminary injunction without it as "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *LePore*, 234 F.3d at 1176–1177. The asserted injury "must be neither remote nor speculative, but actual and imminent." *Id.*

Rodriguez's asserted injury is neither. By his own account, the harm is Supervisor Garcia's prospective participation in determinations that had not been made, in a recount that had not begun, and that does not depend on whether any determination changes the outcome of the race being recount. That is the very definition of a remote and speculative injury. Confronting the same election context, the Eleventh Circuit "reject[ed] the contention that merely counting ballots gives rise to cognizable injury," and found no imminent harm where no voter "was prevented from voting" and no "vote was rejected or not counted." *Id.* at 1177. So too here: Rodriguez identifies no final determination, no rejected vote, and no concrete injury — only the possibility that determinations yet to be made might go against him. Counsel for Rodriguez himself concedes that the type of margins contained in the Unofficial Results are "extremely solid and it is EXTREMELY unlikely that a recount will change that." *See* Exhibit A. That tenuous harm does not meet the "actual and imminent" standard that injunctive relief demands.

## III. Plaintiff has an adequate remedy at law.

The Motion similarly fails for the related reason that Rodriguez has an adequate remedy at law, which an injunction may not displace. As shown above, Florida affords two avenues to redress any genuine defect in the recount: a post-certification election contest under section 102.168, in which the Canvassing Board is an indispensable party and the contestant "is entitled to an

immediate hearing" and common-law certiorari. *See* supra at I. Either can correct "the precise harm" Rodriguez fears once the recount is complete and obviates any need for this Court to intervene beforehand.

The availability of that later relief itself is fatal to the request. The Eleventh Circuit has held that where "any alleged . . . injury . . . can be adequately remedied later," a plaintiff has not shown the kind of harm that "demands the extraordinary relief of a preliminary injunction." *LePore*, 234 F.3d at 1177. Because Plaintiff's asserted injury — if it ever materializes — can be fully addressed through the state remedies the Florida Legislature designed for exactly this purpose, he cannot show the absence of an adequate remedy at law.

**IV. The balance of the equities weighs decisively against an injunction.**

Rodriguez must also show that his threatened injury "outweighs whatever damage the proposed injunction may cause the opposing party." *LePore*, 234 F.3d at 1176 . He cannot. Against his speculative, remediable, and contingent injury stands the concrete and serious disruption an injunction would inflict on the election process itself.

Machine recounts run on a strict statutory clock. They must leave the Canvassing Board sufficient time to comply with the certification deadlines and produce final, public recount results no later than the statutory deadline, and Florida law requires the Canvassing Board to file its second set of unofficial returns "no later than 3 p.m. on the 9th day after any general election in which a recount was ordered." Fla. Stat. § 102.141(7)(c). *See also* Exhibit B at 6. An order recusing Supervisor Garcia mid-recount would require that the Canvassing Board be reconstituted before it could continue its work. Florida law provides that if the supervisor "is unable to serve or is disqualified," the chair of the board of county commissioners "must appoint as a substitute member a member of the board of county commissioners" — a commissioner who is not a candidate with

opposition and not an active participant in any such candidate's campaign — and comparable appointment machinery governs in the event no county commissioner is able to serve, including appointment by the chief judge of the judicial circuit. Fla. Stat. § 102.141(1)(b). That substitution cannot be accomplished instantly and locating and seating a qualified substitute consumes time that the compressed recount calendar does not allow. The harm to the orderly administration of the recount and the integrity of its statutory timeline far outweighs any speculative harm to Plaintiff — particularly where Florida's own scheme already supplies the cure Plaintiff seeks via post-election challenges, making an emergency injunction from a federal district court unnecessary. *See, e.g., Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000) (denying Emergency Motion for Injunction in election matter based on holding that (a) the U.S. Constitution and federal law "indicate that states have the primary authority to determine the manner of appointing [election officials] and to resolve most controversies concerning [elections]" and (b) "the State of Florida has enacted detailed election dispute procedures").

**V. An injunction would disserve the public interest.**

The final element further confirms that relief should be denied. "A State indisputably has a compelling interest in preserving the integrity of its election process." *Purcell*, 549 U.S. at 4. The Supreme Court has warned that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls," and that "[a]s an election draws closer, that risk will increase." *Id.* Under the resulting *Purcell* principle, "federal district courts ordinarily should not enjoin state election laws in the period close to an election," and a plaintiff seeking such relief bears a "heightened" burden to show that its position is "entirely clearcut." *League of Women Voters of Fla., Inc.*, 32 F.4th at 1372. Removing a sitting member of the Canvassing Board in the middle of a recount—and just minutes

before the recount is scheduled to being—is the paradigm of the eve-of-election intervention that *Purcell* counsels against.

Federal courts "may not entertain post-election contests about garden-variety issues of vote counting and misconduct that may properly be filed in state courts." *Wood v. Raffensperger*, 981 F.3d 1307, 1310 (11th Cir. 2020). And confronting a Florida recount specifically, the court in *Touchston v. McDermott*, 234 F.3d 1130 (11th Cir. 2000), denied an injunction, observing that the States have "the primary authority . . . to resolve most controversies" concerning elections, and that where "the State of Florida has enacted detailed election dispute procedures" that are adequate, "state procedures are not in any way inadequate." *Touchston v. McDermott*, 234 F.3d 1130 (11th Cir. 2000). Florida has enacted exactly such procedures here. The public interest lies in allowing the Board to complete its statutory work and in allowing any genuine dispute to be channeled to the state forum that the Legislature designed for exactly such disputes. It should be forced into federal court with a plaintiff seeking to alter the orderly conduct of an election on the eve of a time sensitive recount.

## CONCLUSION

The people of Miami-Dade County elected Supervisor Garcia to be the Supervisor of Elections and to be a member of the Miami-Dade County Canvassing Board. In "making sure every vote counts," Rodrguez must also honor the decision of the voters that entrusted Supervisor Garcia to do her job. If he has criticisms with that job, he is welcome to raise them politically. The United States Constitution simply does not allow a losing candidate to change the makeup of the elected members of the Canvassing Board in the middle of the election based on the facts alleged here. In honoring the will of the people, Rodriguez must honor all of the people's will, not just the portions consistent with his own ambitions. For the foregoing reasons, Defendant Alina

Garcia respectfully requests that the Court deny Plaintiff's Amended Emergency Motion for Preliminary Injunction.

Date: November 8, 2026

Respectfully submitted,
By: */s/ Oren Rosenthal*

**OREN ROSENTHAL (FBN 86320)**
**GENERAL COUNSEL**
**MIAMI-DADE COUNTY**
**SUPERVISOR OF ELECTIONS**
2700 NW 87th Ave.
Miami, Florida 33172
Phone: (305) 499-8537
Fax: (305) 499-8683
oren.rosenthal@votemiamidade.gov

## CERTIFICATE OF SERVICE

I certify that on November 8, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which automatically serves all counsel of record for the parties who have appeared.

*/s/ Oren Rosenthal*

Oren Rosenthal