**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:26-cv-27895-LEIBOWITZ**

**ELIOTT RODRIGUEZ,**

*Plaintiff*,

*v.*

**ALINA GARCIA & MARA ELVIRA SALAZAR,**

*Defendants*.
________________________________________/

## ORDER

The Court heard oral argument on Plaintiff's Amended Emergency Motion for Preliminary Injunction and Incorporated Memorandum of Law (the "Motion" or "Motion for Preliminary Injunction") [ECF No. 8] on November 9, 2026, at which counsel for all parties appeared. [*See* ECF No. 15]. The Court made rulings at the November 9 hearing, which are memorialized in this Order. To the extent that the Court made additional or more detailed rulings on the record that are not memorialized in this written Order, those rulings are binding on the parties as set forth on the record.

Plaintiff Rodriguez and Defendant Salazar are candidates in the 2026 general election for United States Representative, District 27 ("CD27"). [ECF No. 8 ¶ 3]. As of November 5, 2026, the vote margin between the candidates was less than one-half-percent, triggering a recount pursuant to Florida Law. *See* Fla. Stat. § 102.141(7). The Plaintiff's Motion for Preliminary Injunction seeks to prevent Defendant Alina Garcia—the Supervisor of Elections of Miami-Dade County ("Supervisor") and member of the Miami-Dade County Canvassing Board—from participating "as a member of the Canvassing Board in ballot, voter-intent, and recount determinations, including but not limited to equipment-error, correction, retesting, and continuation decisions," in connection with the 2026 general election for CD27. [ECF No. 8 at 1]. Plaintiff's Motion for Preliminary Injunction is based

on a claim of deprivation of due process under the Fourteenth Amendment and 42 U.S.C. § 1983. [*Id.* ¶ 15; *see also* ECF No. 1 ¶¶ 39–46].

According to Plaintiff, Defendant Garcia has a "serious, objective risk of bias," [*see* ECF No. 8 ¶ 1], particularly because of her statements as Supervisor. Plaintiff cites a Miami Herald report from November 4, 2026, indicating that Defendant Garcia stated that Defendant Salazar "is the winner with or without a recount," before adding that it was "possible but not probable" that the results would change, and that "[u]sually the trend we see is what continues." [*Id.* ¶ 9]. Plaintiff also cites the fact that Defendant Garcia's son-in-law represents Salazar in connection with the 2026 general election as indicating bias. [*Id.* ¶ 10].

To obtain a preliminary injunction, Plaintiff bears the burden to make four showings: "(1) [he] has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). "A preliminary injunction is an 'extraordinary and drastic remedy,' and [Plaintiff] bears the 'burden of persuasion' to clearly establish all four of these prerequisites." *Id.* (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).

Plaintiff's Motion for Preliminary Injunction does not show a substantial likelihood of success on the merits and therefore fails on the first factor. To start, Defendant Garcia cites two cases to support that "procedural due process violations do not become complete 'unless and until the state refuses to provide due process.'" *McKinney v. Pate*, 20 F.3d 1550, 1562 (11th Cir. 1994) (quoting *Zinermon v. Burch*, 494 U.S. 113, 123 (1990)); *see also Nat. Lands, LLC v. City of Boca Raton*, 2025 WL 3202902, at *2 (11th Cir. Nov. 17, 2025) ("A State fails to provide due process only if it neglects to offer an adequate post-deprivation remedy to address the alleged procedural defect.") (citing *McKinney*,

20 F.3d at 1557). Defendant Garcia identifies at least two state remedies available to Plaintiff if the election recount is improper. [*See* ECF No. 13 at 9–10 (citing Fla. Stat. § 102.168 and Florida's common law certiorari)]. Plaintiff does not contest that at least one of these remedies would be available to him. [*See* ECF No. 14 ¶ 14]. Given that "[t]he rationale behind *McKinney* is that a State must have the opportunity to cure procedural defects caused by its subdivisions before federal intervention," *Nat. Lands, LLC*, 2025 WL 3202902, at *2, and there have yet to be any state proceedings, this case law weighs against Plaintiff's likelihood of success on the merits. This Motion, among other things, is simply not ripe in that important sense enunciated in *McKinney* and its progeny.

Furthermore, Plaintiff cites two cases to support the merits of his due process claim, but neither are persuasive under the facts of this case. First, Defendant cites *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883 (2009). In *Caperton*, the Supreme Court considered a case involving the CEO of a company that had been held liable in West Virginia for fraudulent misrepresentation, concealment, and tortious interference to the tune of $50 million in damages. *Id.* at 872. Knowing that an appeal would follow, the CEO contributed approximately $3 million to a candidate for the Supreme Court of Appeals of West Virginia. *Id.* at 873. The candidate was elected, and he did not recuse when the CEO's case came before him. The Supreme Court stated that under its precedents, "there are objective standards that require recusal when 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Id.* at 872 (quoting *Withrow v. Larkin,* 421 U.S. 35, 47 (1975)). The "extreme facts" of *Caperton* rose to that level. *Id.* at 886–87.

Next, Plaintiff cites language from *League of Women Voters of Fla. v. Scott*, that "[t]he Constitution requires recusal from public officials when there is a serious, objective risk of bias," 366 F. Supp. 3d 1311, 1318 (N.D. Fla. 2018) (citing *Caperton*, 556 U.S. at 886), and "the simple fact that constitutionally required recusals have largely been judicial does not limit *Caperton* from applying to non-judicial constitutionally required recusals," *id.* at 1316 n.6. [*See* ECF No. 8 ¶ 16]. The court in *Scott*, however,

found that the Governor of Florida was not required to recuse himself from powers related to the electoral process when he was simultaneously a candidate for the United States Senate. *Scott*, 366 F. Supp. 3d at 1313. This was despite the Governor asking state law enforcement to investigate counties in Florida with "rampant" election fraud and commenting that he would "not sit idly by while unethical liberals try to steal [the] election from the great people of Florida," among other statements. *Id.* at 1313–14. During the November 9 hearing, Plaintiff's counsel conceded that the statements in *Scott* were far worse than the (incomplete) statements in the instant case. [Tr. at 12:6–9].

*Caperton* and *Scott* fail to carry the day for Plaintiff; indeed, their facts and reasoning counsel denial of the Motion here. The facts in *Caperton* involved a judicial officer and a bias evidenced by $3 million in campaign contributions. The facts here, including Defendant Garcia's statements and her relationship to an attorney for Defendant Salazar, fall far short of the almost undeniable bias present in *Caperton*. And even though *Scott* subsequently applied the *Caperton* standard to a non-judicial officer, the court did not hold that Governor Scott's failure to recuse was unlawful even after he made "haphazard and reckless" statements that far surpass the ones in this case. *Scott*, 366 F. Supp. 3d at 1318. Defendant Garcia's statements were perhaps unwise (and this Court does not even have her full statements in evidence), but they did not rise anywhere near the level of bias shown in *Scott*, where the court still ultimately denied the preliminary injunction. *Id.*

Accordingly, for these and other reasons stated in the Defendant's response to the Motion [ECF No. 13], it is hereby **ORDERED AND ADJUDGED** that the Motion [**ECF No. 8**] is **DENIED.** At the hearing, the parties agreed that any filings in the Southern District of Florida arising from or related to this matter shall be filed before and directed to the undersigned. [Tr. at 21:21–22:11].

**DONE AND ORDERED** in the Southern District of Florida on November 9, 2026.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record